MIDDLETON S. BORLAND, as Receiver of the HUDSON NAVIGATION COMPANY, Plaintiff, *v.* JOHN A. CURTO and Others, Defendants.

Supreme Court, Rensselaer County, August, 1923.

**Injunctions — steamboat dock belonging to city under lease to navigation company — right of receiver of navigation company to contract for transportation of passengers by vehicles — what is not a private hack-stand on public property.**

Where the receiver of a navigation company has full control of leased property all persons who without his permission enter upon the premises with taxicabs or other vehicles to solicit trade are intruders and trespassers.

A contract between such a receiver and a particular person for the conveyance of passengers arriving on the steamboats of the navigation company to such places as they might desire to go did not authorize said person to station his taxicabs on the steamboat premises beyond the hour of nine-thirty A. M., and while the contract did not in express terms forbid him to solicit custom from the public generally, it did not authorize him to do so and did not contemplate that he should. *Held,* that the receiver was within his rights in making the contract which could not be interpreted as a violation of section 444 of the Penal Law which in effect makes it a crime to maintain a private hackstand on public property.

SUIT for an injunction.

*Louis F. O' Neill,* for plaintiff.

*John H. Gleason,* for defendants.

HOWARD, J. I concur with Justice Rosch's opinion written at the time of the application to vacate the temporary injunction, and hold, as he did, that the Hudson Navigation Company has full control of the leased property and that all persons entering upon the premises with taxicabs or other vehicles for the purpose of soliciting trade without the permission of the receiver are intruders and trespassers.

It would be unnecessary here to add anything more except that the defendants press upon my attention the provisions of section 444 of the Penal Law, a phase of the subject which, apparently, was not urged upon Justice Rosch. Section 444, in effect, makes it a crime to maintain a private hack stand on public property.

The defendants contend that the receiver's contract with O'Hagan, and the manner and places in which the latter stations his taxicabs, amount to the maintenance of a private hack stand on public property; that is, upon property owned in fee simple by the city of Albany. If this be so the receiver cannot be afforded relief in this court of equity for if he is permitting a private hack stand to be maintained on public property his acts amount to a continuing crime and bring him into court with unclean hands.

But is O'Hagan maintaining a private hack stand? A private hack stand, as I conceive the meaning of that expression, is a station where taxicabs or other vehicles are kept standing for the purpose of soliciting trade from the public generally and indiscriminately, at all hours. No such condition obtains here. The receiver has simply contracted with O'Hagan to convey the passengers arriving on the steamboats of the Hudson Navigation Company to such places in the city of Albany or elsewhere as they may desire to go. It is the same as if the receiver had contracted with an expressman to convey freight to its destination in Albany. The contract with O'Hagan does not authorize him to station his taxicabs on the steamboat premises beyond the hour of nine-thirty in the morning. It is true that the contract does not in express terms forbid O'Hagan to solicit custom from the public generally but it does not authorize him to do so and does not contemplate that he shall do so. It would be stretching this contract beyond reason to interpret it into a crime. The receiver was within his rights in making such a contract for the accommodation of the passengers of the steamboat company and to facilitate its business. Perhaps some support for this view may be found in *City of New York* v. *Hexamer*, 59 App. Div. 4.

It follows that the injunction must be granted. I do not, however, by any order I grant here or any finding I make, undertake to interfere with the acts of the defendants in the public streets outside the leased premises. The defendants have no right to block traffic or interfere with the plaintiff or his business in the public streets, neither have they any right to interfere with any other person, but the regulation of traffic in the public streets is for the police, not the courts. I do not hold that the court cannot issue a restraining order against illegal acts in the public streets but it would be so impracticable to undertake by mere words to regulate the conduct of crowded thoroughfares that it seems to me more fitting to leave that duty to the uniform and club and living presence of the policeman.

Judgment accordingly.